JUDGE GOFER
delivered the opinion oe the court.
By an act of assembly approved March 20,1871 (1 Session Acts 1871, page 102), the superintendent of public instruction was directed to buy of the appellee, at the price of $4 per copy, such number of Collins’s Historical Sketches of Kentucky as should be sufficient to supply one copy thereof to each common school district in the state, and one copy for each school room for children over ten years of age having a separate teacher in cities and towns which, for convenience, were treated as one district, but providing that none should be purchased for such districts as should vote against it at the then ensuing election for school trustees.
The act also provided that as the books were delivered to the superintendent he should examine them, and if they were *389 found to cox’respond with, cex’tain requirements of the act that he should certify to the auditor of public accounts the number delivered, and that the auditor should draw his warrant upon the treasurer, for the price, payable out of the proceeds of a tax of fifteen cents upon each $100 of taxable property levied and collected in the years 1871 and 1872 for school purposes.
In Collins v. Henderson, &c. (11 Bush, 74) this court decided that so much of said act as directed payment to be made out of the tax levied for school purposes was unconstitutional.
At its last session the general assembly passed an act for the benefit of the appellee. (Session Acts 1876, page 485.)
The preamble to the act recites that the appellee claimed that the commonwealth ought to carry out the provisions of the act of March 20, 1871, and that he had been injured by the delay and refusal of the officers of the state to comply with the same.
The first section provides that “ it shall be lawful for said Richard H. Collins to institute a suit against the commonwealth of Kentucky in the Franklin Circuit Court to obtain a judicial construction of said act, and to decide the liability of the state, if any, under said act, and to recover from the commonwealth any and whatever damages he may have sustained, if any, by the refusal and delay, if any, to comply with said act.”
Section 3 provides that “if the judgment of the circuit court shall be in favor of the plaintiff, and no appeal shall be taken within the time required by law, or if an appeal be taken and the judgment be affirmed by said court, then the plaintiff shall comply with the requirements of said act in every respect as set forth therein, if so adjudged- by said court, or (and) whatever said judgment shall be, if any, in favor of said plaintiff, the auditor shall draw his warrant upon the treasurer for the amount thereof, and the treasurer is directed to pay the same.”
*390 The appellee brought suit under the act of 1876, and, upon hearing, the court adjudged that the act of 1871 amounted to a contract with him, and that said contract should be executed, and to that end ordered that the appellee should within a reasonable time deliver to the superintendent of public instruction one copy of his book of the character and description set forth in the act of March 20, 1871, for each common school district in the state, and one copy for each school room of children over ten years of age having a separate teacher, in cities and towns which, for convenience, are treated as one district, and requiring the superintendent to certify the number delivered and the auditor to draw his warrant therefor at the rate of |4 per copy, with interest thereon at the rate of six per cent per annum from March 15, 1874, that being the time at which it appeared the appellee could have delivered the books if he had not been notified by the superintendent that, believing the act unconstitutional so far as it directed payment therefor out of the school fund, he would not receive them.
From that judgment the commonwealth prosecutes' this appeal.
1. The first objection urged is that it does not appear that the appellee tendered the books, or that he is able to do so, and that without a tender of the books he was not entitled to a specific execution of the contract.
The general rule certainly is that a party seeking to enforce the specific execution of a contract must either have performed or tendered performance on his own part, or show a sufficient excuse for not having done so.
But that rule is not applicable here. The act authorizing the suit shows upon its face, in language not to be misunderstood, that the legislature did not mean to insist that the appellee should show a strict compliance on his part with the terms of the act of 1871, and to deny relief if he should fail to make out a technical right of recovery according to the *391 rules of law, for it directs that in case there shall be a decision in his favor he shall then comply with the requirements of the aet of 1871; and this shows that when, in the first section of the act of 1876, he is authorized to have the court decide upon the liability of the state under the former act, the object was to obtain a decision upon the question whether there ever had been a valid contract between the appellee and the state.
That there was a valid contract that could have been enforced by the party not in default but for the fact that the state could not be sued without legislative authority we entertain no doubt.
Whether the appellee was ever guilty of a bi’each of contract, which discharged the state from the obligation thereof, we need not and do not inquire, because, as already remarked, the act authorizing this suit directs that in case there shall be a judgment in his favor the appellee shall then comply with the requirements of the act of 1871.
That the object of the legislature was to submit to the courts the question whether thei-e had been a valid contract, and not whether the state had been discharged from its obligation by supposed default of appellee, is further manifested by that provision which allows him to have a judicial construction of the act of 1871 and a decision upon the liability of the state.
Why construe the act, if not for the purpose of ascertaining whether it imposed obligations upon the state?
In our opinion the language does not admit of any other construction than that the legislature intended to submit the question of the original obligation of the state to the decision of the courts, and to waive any question whether the appellee had been in default, so as to discharge the state from liability. And this conclusion is fortified by the provision of the second section that the petition shall be taken to be controverted *392 without answer. No answer by the commonwealth was contemplated, and without an answer the defense that the commonwealth had been discharged by the default of the appellee could not be interposed, because'such a defense is affirmative in its character, and must be so pleaded. In order to avail itself of that defense the commonwealth would have been ■compelled to answer and aver that it was ready and willing to perform its part of the contract by receiving and paying for the books, and that the appellee refused to deliver them.
If the legislature had intended that such a defense should be made, it would not have plainly indicated that it expected no answer to be filed, by requiring the allegations of the petition to be taken as controverted without an answer.
2. The second objection is that the action should have been for damages, and not to enforce a specific performance of the contract, for which latter, it is said, there are no peculiar or special reasons.
In addition to the fact already adverted to, that the legislature intended, in the event it was decided that the act of 1871 constituted a valid contract, its provisions should thereafter be complied with, it seems to us that a suit for specific execution was demanded by the peculiar character of the contract and the impossibility of ascertaining the amount of damages to which the appellee would be entitled.
3. It is argued, in the third place, that a contract to be specifically enforced must be such that it might, at the time it was entered into, be enforced by either party, and that the appellee had not agreed to furnish the books, and therefore that there never was mutuality of obligation.
"We think the petition alleges and the evidence proves that the appellee undertook to deliver the books. He procured the passage of the act. It was his proposition accepted by the legislature, and when the acceptance was completed both parties were bound by it.
*393 It is also claimed that the appellee was never bound on the contract, because if he had been sued by the state for breach thereof, he could have answered that the school fund out of which he was to be paid could not be so appropriated, and that he was therefore without remedy.
This did not affect the validity of the contract. It would not have proved that the state was not bound on the contract, but simply that the appellee had no legal means of obtaining redress.
Before the state could have maintained such an action it would have been compelled to allege its own readiness and ability to perform its contract, and to prove it if denied; but this would not have proved that there had been no valid contract, but simply that the state, not being able to perform its part, had no cause of action.
We perceive no error in allowing interest by way of damages for the delay in the execution of the contract resulting from the refusal of the state to receive the books. The act expressly authorizes damages to be awarded, and interest was the proper criterion of recovery for the delay.
But we are of the opinion that the court erred in directing one copy for each district and school room, such as is described in the judgment and in the act of 1871, to be received and paid for. That act did not authorize the superintendent to purchase copies for such districts as voted against its purchase. The state only agreed to take, and the appellee to furnish, copies for such districts as failed to vote against it, and as, by the terms of the act of 1876, only the requirements of the act of 1871 are directed to be carried out, only such number as might have been received under that act should be ordered to be received now.
Wherefore the judgment is reversed, and the cause is remanded for a judgment in conformity with this opinion.